CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
September 29, 2026
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Donny Lynn Sprouse, Jr., | ) | Case No. 3:26-cr-00006 |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter is before the court on Defendant Donny Lynn Sprouse, Jr.'s motion to suppress. (Dkt. 30.) Sprouse argues that the warrantless search of his vehicle on February 28, 2025, violated the Fourth Amendment. Sprouse asserts that the search was unconstitutional because no exception to the warrant requirement applies, the officer did not have probable cause to search the vehicle, and the Fourth Amendment waiver provisions in Sprouse's prior state court plea agreement and sentencing order do not justify the search. Accordingly, he moves to suppress all the evidence seized during the vehicle search. He also asks to suppress the statements he made before receiving *Miranda* warnings.

For the following reasons, the court will grant in part and deny in part Sprouse's motion to suppress.

# I. Background

## A. Factual History[1]

On February 28, 2025, while conducting radar, Scottsville police officer Brad Wood observed a white Toyota Camry enter Scottsville from Buckingham County. (Field Case Rep. at 2, 4 (Dkt. 30-5).) He "knew the vehicle to be owned and operated by" Sprouse, who had active capias orders at the time. (*Id.* at 4; *see* Capias Orders (Dkt. 30-3).) The capias orders had been issued for Sprouse's failure to appear in a civil matter, and they ordered that Sprouse be held without bail. (Capias Orders.)

Officer Wood followed the Toyota Camry into the parking lot of GoCo Food Mart. (Dashcam at 0:29–1:25 (Dkt. 30-1).) There, Sprouse exited the car and entered the store. (*Id.* at 1:17–1:24.) A woman, later identified as Ashley Whorton, Sprouse's girlfriend, stepped out of the passenger seat of the car a few seconds later, and started to make her way to the store's entrance. (*Id.* at 1:27–1:42; Body Worn Camera at 6:28–6:32 (Dkt. 30-2); *see* Field Case Rep. at 1, 4.) Officer Wood instructed Whorton to remain outside while he entered the store. (Field Case Rep. at 4.) After walking into the store, Officer Wood located Sprouse, "gave him commands to stay where he was," and "advised him of his warrant status." (*Id.*) Sprouse was compliant, and Officer Wood "detained him without incident." (*Id.*)

Once Officer Wood handcuffed Sprouse, he walked Sprouse outside of the store, conversed with both Whorton and Sprouse,[2] and then searched Sprouse. (*Id.* at 4; *see* Dashcam

---

[1] The following facts are drawn from the parties' briefs and exhibits. (*See* Dkts. 30, 36, 37, 39.)

[2] The conversation between Officer Wood, Sprouse, and Whorton appeared to last for at least several minutes, (Dkt. 30-1 at 4:20–8:00), but neither party's filings address what was discussed during this time.

at 3:59–8:45.) While readjusting Sprouse's handcuffs, Officer Wood asked Sprouse if there was anyone else in the car, to which Sprouse replied "my dog." (Body Worn Camera at 0:50–1:00.) Then, Officer Wood placed him in the back of his patrol car and closed the door to the backseat. (*See id.* at 1:27–2:19; Field Case Rep. at 4.) Officer Wood returned to Sprouse's car, let his dog out of the car, and stated to Whorton that "because he was the driver . . . I can search his reachable area." (Body Worn Camera at 2:52–3:09; *see* Field Case Rep. at 4.) Sprouse began to speak from the backseat, but his statements are inaudible in the video recording from the body worn camera. (Body Worn Camera at 3:22–3:30.) When Officer Wood asked Sprouse what he had said, Sprouse responded, "I don't consent to any search of my vehicle." (*Id.* at 3:30–3:34.) Officer Wood replied:

> Okay, Donny, here's the thing, alright? This is a traffic stop, and a warrant service. And you were the driver of the vehicle, okay? Your reachable area in that vehicle, I can search. It's just the way it is, okay? You can give consent if you want, but I don't need consent.
>
> Is there anything you wanna tell me? Anything you need to tell me?
>
> Dude, I'm working with you here. Again, that's me. I'm always gonna work with ya. But if there's something you need to tell me, I would tell me.

(*Id.* at 3:36–4:15; Body Worn Camera Tr. at 1 (Dkt. 36-3).)

Then, Officer Wood called Chief Greg Jenkins and asked him to "come down here to Go-Co." (Body Worn Camera at 4:43–4:46, 5:45–6:02; Body Worn Camera Tr. at 2.) Wood explained that he had Sprouse in custody, that Sprouse was driving a vehicle, and that Wood is "pretty sure [the car is] gonna be loaded down." (Body Worn Camera at 6:02–6:10; Body Worn Camera Tr. at 2.) He also stated that Sprouse's "girlfriend's here with the dog" and that

Wood was planning to search "his reachable area from the driver's seat." (Body Worn Camera at 6:28–6:38; Body Worn Camera Tr. at 2.)

Officer Wood checked back in on his patrol car, where Sprouse made inaudible statements and said "I really have to pee, man." (Body Worn Camera at 7:22–7:26; Body Worn Camera Tr. at 2.) Wood told Sprouse that he was going to have to wait. (*Id.*) Their conversation continued:

> **Officer Wood**: Is there something that you wanna tell me? Again, Donny. I'm gonna work with you, alright? But you just need to be honest with me.
>
> **Sprouse**: Who you got coming down?
>
> **Officer Wood**: Who else is coming? A County officer was attached to this call. . . .
>
> **Sprouse**: I don't understand. What did you even stop me for?
>
> **Officer Wood**: Because I knew you had a warrant. I knew that was your car, okay? Alright? So, that's the reason for the stop, alright? You're a wanted person. This vehicle's registered to you. . . . You're the driver of this vehicle, okay?
>
> **Sprouse**: I wasn't driving it.
>
> **Officer Wood**: You were driving it. You got out of the driver's seat; she got out of the passenger seat, alright? All that's on the camera when I'm pulling in. It's all caught on camera, okay? If there's something you need to tell me—if there's something in the vehicle that I'm gonna find—then you telling me is gonna help you out. . . .
>
> **Sprouse**: How's it gonna help me?
>
> **Officer Wood**: How's it gonna help you? Because you're, you're coming out about it instead of me having to . . .
>
> **Sprouse**: But I don't want to spend the weekend in jail, bro.

> **Officer Wood**: There—it's not about a weekend in jail. It's about helping yourself out.
>
> **Sprouse**: I've got a pipe. I've got a pipe, okay? I've got a—I've got a pipe.
>
> **Officer Wood**: On you?
>
> **Sprouse**: No.

(Body Worn Camera at 7:30–9:45; Body Worn Camera Tr. at 3–4.)

Officer Wood then advised Sprouse of his Miranda rights. (Body Worn Camera at 10:00–10:19; Body Worn Camera Tr. at 4–5.) After Wood asked Sprouse if he was willing to answer any questions without an attorney present, Sprouse responded "I'll talk to you, like . . . ." (Body Worn Camera at 10:19–10:29; Body Worn Camera Tr. at 5.) Officer Wood replied, "So, you're saying yes." (Body Worn Camera at 10:30–10:33; Body Worn Camera Tr. at 5.) Officer Wood then asked Sprouse where the pipe was, and Sprouse responded: "in the center console." (Body Worn Camera at 10:33–10:39; Body Worn Camera Tr. at 5.)

Officer Wood then directed Whorton to go stand by the corner of the building, and he began searching Sprouse's car. (Body Worn Camera at 10:45–10:58; Body Worn Camera Tr. at 5; *see* Mot. to Suppress at 3 (Dkt. 30).) Officer Benjamin Chisom, who had arrived at the scene, assisted with the search. (Field Case Rep. at 4.) In the center console, they found a bag containing around eight grams of a crystal substance, (Mot. to Suppress at 3 (Dkt. 30); Field Case Rep. at 4), which later tested positive for methamphetamine, (Field Case Rep. at 4; *see* Certificate of Analysis at 2 (Dkt. 36-4)). Then, the officers searched the driver's seat area, opened various zipped bags and containers, and eventually found "a small glass pipe inside of a cloth eyeglasses sleeve" in the driver's seat. (Mot. to Suppress at 3–4; Field Case Rep. at 4.)

They continued to search the car and found "a bag containing [over 350] grams of crystal substance in a Milk Bone dog treat box in the floor board area behind the drivers seat," (Field Case Rep. at 4), which was later identified as methamphetamine, (*see* Certificate of Analysis at 1; Mot. to Suppress at 4). Officer Wood also found packing materials and two sets of digital scales in the back seat. (Mot. to Suppress at 4.) The search of Sprouse's car took approximately twenty minutes. (*Id.*)

In March of 2020, Sprouse pled guilty to a felony racketeering charge in Nelson County pursuant to a written plea agreement. (Plea Agreement (Dkt. 36-1).) He had been charged with three drug offenses, but under the terms of the plea agreement, the Commonwealth dismissed two of those charges. (*Id.* at 1–2.) In the agreement, the Commonwealth recommended a sentence of fifteen years' incarceration with thirteen years suspended. (*Id.* at 2.) The conditions set forth in the agreement included the following "special condition":

> **FOURTH AMENDMENT WAIVER**: As a condition of this plea agreement, the Defendant specifically agrees to waive his/her Fourth Amendment right against a warrantless search for a period of FOUR (4) years from release from incarceration. The Defendant agrees to consent and voluntarily submit to a *warrantless search* of his/her person, place of residence *or any vehicle he/she is occupying*, at any time of the day or night by any law enforcement officer during this period. The Defendant further agrees that any evidence seized from such search shall be admissible in any hearing or trial resulting therefrom[.]

(*Id.* at 2–3 (emphasis added).) Sprouse, his defense attorney, and the Commonwealth's attorney all signed this agreement on March 16, 2020. (*Id.* at 4.) Sprouse specifically signed a statement that he had "read the foregoing plea agreement in its entirety," "discussed it with [his] attorney," "underst[ood] its contents," and "request[ed] that the Court accept such

agreement." (*Id.*) He also indicated that he entered the plea "freely and voluntarily." (*Id.* at 5.)

After a hearing, the Nelson County Circuit Court accepted the guilty plea and plea agreement on March 16, 2020. (*Id.* at 4; *see* Adjudication & Sentencing Order at 1 (Dkt. 30-4).) The following day, the circuit court entered an Adjudication and Sentencing Order. (Adjudication & Sentencing Order at 4.) The order held that "the defendant's plea was made voluntarily with an understanding of the nature of the charge and the consequences of the plea," and found Sprouse guilty of the racketeering charge, Va. Code Ann. § 18.2-514. (*Id.* at 2.) In the same order, the court sentenced Sprouse to an active sentence of two years' incarceration, two years of supervised probation following his release from incarceration, and seven years of good behavior starting on the date of his sentencing. (*Id.* at 2–3.) It also imposed a list of "Suspended Sentence Conditions," which included the "Fourth Amendment Waiver" condition that was included in Sprouse's plea agreement. (*Id.* at 3 (repeating the same language as the plea agreement's waiver provision, with only minor alterations such as omitting "[a]s a condition of this plea agreement").)

Sprouse was released from imprisonment on December 27, 2021. (*See* Dkt. 36-2.) Thus, his two-year term of supervised probation, seven-year term of good behavior, and the four-year period of his Fourth Amendment waiver began on that same day. (*Id.*) When Sprouse was arrested for the instant offense on February 28, 2025, he was no longer serving the term of probation, (Def.'s Reply at 1–2 (Dkt. 37)), but he was still subject to the four-year Fourth Amendment waiver condition of his suspended sentence.

### B. Procedural History

On May 13, 2026, a grand jury returned a single-count indictment against Sprouse. (Dkt. 3.) The indictment charged him with possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). (*Id.*) Sprouse filed the instant motion to suppress on August 20, 2026. (Dkt. 30). He asks to suppress the evidence seized during the warrantless search of the car—specifically, the two bags of methamphetamine, digital scales and packing materials, and a glass pipe. (Mot. to Suppress at 1, 14; Field Case Rep. at 3.) The court granted the government's unopposed motion to extend the briefing deadlines. (Dkts. 31, 32.) The government timely responded to the motion to suppress on September 3, 2026, (Dkt. 36), and Sprouse replied on September 10, 2026, (Dkt. 37). The government filed a supplemental brief on September 15, 2026, (Dkt. 39), pursuant to the court's order, (Dkt. 38).

"District courts need not conduct an evidentiary hearing on all suppression motions." *United States v. Bowman*, 106 F.4th 293, 300 (4th Cir. 2024). An evidentiary hearing is only "*required* when the motion asserts facts that (1) are disputed and unresolvable on the record and (2) will affect the resolution of the constitutional claim." *Id.* (emphasis added); *see United States v. Griffin*, 811 F. App'x 815, 816 (4th Cir. 2020) (unpublished per curiam decision). Because Sprouse's motion does not "raise[] a material factual dispute," *Bowman*, 106 F.4th at 300, the court will decide the motion without a hearing.

## II. Standard of Review

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Evidence seized in violation of the Fourth Amendment is generally subject to suppression under the exclusionary rule. *United States v. Calandra,* 414 U.S. 338, 347–48 (1974). To determine whether suppression is appropriate, the court must first assess whether the defendant has a "constitutionally protected reasonable expectation of privacy" in the place searched or items seized. *New York v. Class*, 475 U.S. 106, 112 (1986) (quoting *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). "A search or seizure for Fourth Amendment purposes does not occur, therefore, when a person lacks a reasonable expectation of privacy in the material examined." *United States v. Davis*, 690 F.3d 226, 241 (4th Cir. 2012).

Second, the Fourth Amendment only prohibits unreasonable searches and seizures. *See Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 619 (1989). "Although as a general matter, warrantless searches 'are *per se* unreasonable under the Fourth Amendment,' there are 'a few specifically established and well-delineated exceptions' to that general rule." *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 760 (2010) (quoting *Katz*, 389 U.S. at 357). If a valid exception to the warrant requirement applies, the warrantless search or seizure does not violate the Fourth Amendment. *See United States v. Ferebee*, 957 F.3d 406, 418 (4th Cir. 2020). Even when a specific warrant exception does not apply, a court may nevertheless find that warrantless search is reasonable by weighing "the degree to which [the search] intrudes upon an

individual's privacy and . . . the degree to which it is needed for the promotion of legitimate governmental interests." *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999).

"In deciding a motion to suppress, the district court is empowered to make findings of fact, and conclusions of law." *United States v. Adkinson*, 191 F. Supp. 3d 565, 568 (E.D. Va. 2016) (citing *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir. 2005)). A defendant generally has the burden of proof on his motion to suppress. *See United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981) (citing *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1981)). "To prevail in a Fourth Amendment challenge, the criminal defendant bears the burden of establishing a legitimate expectation of privacy in the searched property, at the time of the search, by a preponderance of the evidence." *United States v. Daniels*, 41 F.4th 412, 415 (4th Cir. 2022). But once a reasonable expectation of privacy is established, "[t]he government bears the burden of proof in justifying a warrantless search or seizure." *United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013). For the challenged evidence to be admissible, the government must justify its search by a "preponderance of the evidence." *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974); *United States v. Seerden*, 264 F. Supp. 3d 703, 708 (E.D. Va. 2017).

## III. Analysis

Sprouse argues that both (1) the statements he made prior to Officer Wood's recitation of the *Miranda* warnings and (2) the physical evidence uncovered from the warrantless search of the vehicle must be suppressed. The court will address the admissibility of each form of evidence in turn.

### A. Suppression of Sprouse's Pre-*Miranda* Statements

Under the Fifth Amendment privilege against self-incrimination, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court set forth procedural safeguards protecting this privilege for individuals subject to custodial interrogation. *Miranda* requires law enforcement officers to warn an individual in custody, "prior to any questioning," that "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Id.* at 479. "A person is 'in custody' for purposes of *Miranda* either if the person has been arrested or if his freedom of action has been curtailed to a degree associated with arrest." *United States v. Sullivan*, 138 F.3d 126, 130 (4th Cir. 1998). A person is subject to interrogation when "subjected to either express questioning or its functional equivalent." *United States v. Bell*, 901 F.3d 455, 462 (4th Cir. 2018) (citing *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980)). "Any statements elicited from a suspect in violation of [*Miranda*] are inadmissible in the prosecution's case-in-chief." *Sullivan*, 138 F. 3d at 130.

Here, it is clear that Sprouse was both in custody and subject to interrogation when he made the challenged statements. Sprouse was arrested, handcuffed, and seated in the back of a police vehicle with the back doors closed. (Body Worn Camera at 3:59–4:15, 7:27–9:46.) "[A] reasonable man in [Sprouse's] position would have understood" that he was "in custody." *Berkemer v. McCarty*, 468 U.S. 420, 422 (1984). Additionally, Officer Wood repeatedly and

expressly asked Sprouse questions and encouraged Sprouse to speak—that if there was anything Sprouse needed to tell Officer Wood, or if there was "something in this vehicle that [Officer Wood was] gonna find," Sprouse should tell him. (Body Worn Camera at 3:59–4:15, 7:27–7:34, 8:26–8:40; Body Worn Camera Tr. at 3–4.) Accordingly, Sprouse was subject to custodial interrogation before Officer Wood read him the Miranda warnings. (*See id.* at 9:48–10:23; Body Worn Camera Tr. at 4.) The court will grant Sprouse's motion insofar as it seeks suppression of the statements Sprouse made to Officer Wood after he was arrested and before he received his *Miranda* warnings.[3]

**B. Suppression of Physical Evidence in Vehicle**

Sprouse challenges the constitutionality of the officers' warrantless car search on several grounds. He argues that the warrantless search was unreasonable because: (1) it did not constitute a search incident to a lawful arrest, (2) it did not fall within the automobile exception to the warrant requirement, and (3) Sprouse's statements to Officer Wood do not suffice to establish probable cause or reasonable suspicion to support the search. (Mot. to Suppress at 5–10; Def.'s Reply at 13–19.) Sprouse also argues that the Fourth Amendment search waiver in his Nelson County Circuit Court plea agreement and sentencing order does not justify the search. (Mot. to Suppress at 10–14.) He does not, however, challenge the constitutionality of the initial traffic stop.

The government responds that there was no search in this case because Sprouse lacked *any* reasonable expectation of privacy in his car after he (1) signed a plea agreement that

[3] The court will address Sprouse's argument that the statements he made were involuntary *infra* in Subsection III.B.2.iv.

included a four-year waiver of his Fourth Amendment rights against warrantless searches, and (2) acknowledged the conditions of his suspended sentence, which included this same waiver term. (Gov't Opp. at 7–16.) According to the government, the waiver eliminated—or at least diminished—Sprouse's expectation of privacy in his vehicle at the time of the search. (*Id.* at 8–10, 16.) The government also argues that even if Sprouse had Fourth Amendment rights in his car, his admissions to Officer Wood after the stop established independent and sufficient grounds for the search. (*Id.* at 16–23.)

1. Fourth Amendment Search

The court begins by evaluating whether the search of Sprouse's car constitutes a search within the meaning of the Fourth Amendment under either the *Katz* reasonable expectation of privacy test or the *Jones* physical intrusion test.

Under the *Katz* formulation, a Fourth Amendment search occurred if two threshold factors are met: (1) the defendant had a subjective expectation of privacy in the area searched, and (2) society is willing to recognize this expectation of privacy as objectively reasonable. *Doe v. Broderick*, 225 F.3d 440, 450 (4th Cir. 2000); *see Katz*, 389 U.S. at 361 (Harlan, J., concurring). The government argues that *Sprouse* did not have *any* reasonable expectation of privacy in his vehicle because the Fourth Amendment waiver in his plea agreement and sentencing order extinguished such expectation. (Gov't Opp. at 8–16.) Fourth Amendment waivers are generally constitutional as conditions of a defendant's probation term or plea agreement. *See United States v. Perry*, No. 1:25-cr-00011, 2025 WL 2938819, at *3 (W.D. Va. Oct. 16, 2025) (collecting cases) ("It is well-established in the Fourth Circuit that, where a probationer has

waived his Fourth Amendment rights as a condition of his release, 'a warrantless search of a person on supervised release is not unconstitutional.'" (quoting *United States v. Linney*, No. 19-4590, 2021 WL 4439161, at *4 (4th Cir. Sep. 28, 2021))); *see United States v. Knights*, 534 U.S. 112, 120–21 (2001); *see also Anderson v. Commonwealth*, 507 S.E.2d 339, 341–42 (Va. 1998). The waiver must be given freely and voluntarily. *See Perry*, 2025 WL 2938819, at *3; *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49 (1973).

However, the Fourth Circuit has not directly addressed whether a probation or plea agreement waiver *eliminates* a defendant's reasonable expectation of privacy in the areas identified in the waiver at issue. Nor has the Supreme Court. *See Knights*, 534 U.S. at 120 n.6 (2001) ("We do not decide whether the probation condition so diminished, *or completely eliminated*, Knights' reasonable expectation of privacy . . . ."). The Fourth Circuit most recently discussed the impact of a probation condition in which the defendant waived his Fourth Amendment rights in *United States v. Perez*, 167 F.4th 709, 715–17 (4th Cir. 2026). There, the court characterized the waiver as part of an "exception to the warrant requirement" that applies to searches of probationers. *Id.* at 715. In doing so, the court implied that the waiver is more aptly considered as part of the court's second-step analysis of reasonableness rather than its first-step assessment of whether there was a Fourth Amendment search.

The *Perez* court also cited *United States v. Knights*, in which the Supreme Court held that a similar probation condition "significantly diminished [the defendant's] reasonable expectation of privacy" and that when weighed against the government's interest in the search, the warrantless search of the probationer's house was ultimately reasonable under the totality

of the circumstances. *Id.* at 716–17 (quoting *Knights*, 534 U.S. at 120). This court recently noted that a probationer subject to a Fourth Amendment waiver retained a reasonable expectation of privacy that, "although potentially diminished," was sufficient to provide him with standing to challenge a search, and proceeded to the reasonableness determination.

Even if this court were to find that the waiver eliminated Sprouse's reasonable expectation of privacy in his car, Sprouse asserts that there would still be a search within the meaning of the Fourth Amendment under an alternative definition of "search." (Def.'s Reply at 3–4.) "[E]ven in the absence of an invasion of privacy in *Katz* sense," "a physical invasion of a 'constitutionally protected area' can also constitute a 'search' for Fourth Amendment purposes." *Myers v. Town of Elkton*, 745 F. Supp. 3d 219, 232 (D. Md. 2024), *aff'd in part, appeal dismissed in part sub nom. Myers v. Devine*, No. 24-1879, 2026 WL 1864759 (4th Cir. June 29, 2026). In other words, "where there has been a 'physical intrusion of a constitutionally protected area,' a 'search' has occurred, regardless of whether that intrusion also entailed access to or disclosure of information that a person has kept private." *Id.* (quoting *Florida v. Jardines*, 569 U.S. 1, 5 (2013)). In *United States v. Jones*, the Supreme Court held that "the Government's installation of a GPS device on a target's vehicle" to monitor the car's movements is a physical intrusion on an "effect," such that it constitutes a search—even if the vehicle's owner did not have a "reasonable expectation of privacy" in the underside of his car and in the location of his car on public roads. 565 U.S. 400, 404–11 (2012).

Here, the officers looking through the interior of Sprouse's car and opening various containers involves physical intrusions into constitutionally protected "effects." *See United*

*States v. Joyner*, No. 2:20-cr-00011, 2021 WL 1287676, at *3 (E.D.N.C. Mar. 15, 2021), *report and recommendation adopted*, 2021 WL 1270983 (E.D.N.C. Apr. 6, 2021) (citing *Class*, 475 U.S. at 114–15) ("The act of reaching into a vehicle to investigate potential contraband is a search for Fourth Amendment purposes, as it is a physical intrusion into a constitutionally protected area."); *see also United States v. Taylor*, 963 F. Supp. 2d 580, 595 (S.D.W. Va. 2013) (holding that "law enforcement physically occupied private property—the Buick—for the purpose of obtaining information" and therefore entry of the car was a search); *United States v. Ngumezi*, 980 F.3d 1285, 1289 (9th Cir. 2020) (applying "a bright-line rule that opening a door and entering the interior space of a vehicle constitutes a Fourth Amendment search" such that the officer's entry into "the interior space of the vehicle when he leaned in across the plane of the door" constituted a search). However, unlike for the *Katz* reasonable expectation of privacy inquiry, the parties do not provide, and the court does not find, case authority addressing whether a Fourth Amendment waiver impacts the analysis of whether there is a Fourth Amendment search under the *Jones* physical intrusion test.

Given that Fourth Circuit courts have typically analyzed the effects of waiver provisions as part of the reasonableness analysis, *see, e.g.*, *Perez*, 167 F.4th at 715, and given the lack of precedent regarding the effect of Fourth Amendment waivers on the physical intrusion test, the court will assume without deciding that the warrantless search of Sprouse's car constitutes a Fourth Amendment search. The court will proceed to analyzing whether the search was reasonable, including whether the waiver could have diminished Sprouse's

reasonable expectation of privacy such that a lower level of suspicion than probable cause justifies Officer Wood's search.

2. Reasonableness of the Search

The government does not assert that the warrantless search of Sprouse's car falls within any single "established and well-delineated exception[]"to the warrant requirement.[4] *See Katz*, 389 U.S. at 357. Instead, it argues that under the "totality of the circumstances," Officer Wood had probable cause or reasonable suspicion and the search was reasonable. (Gov't Opp. at 16–23 (quoting *Samson v. California*, 547 U.S. 843, 852 (2006).) It posits that several factors—the signed waiver provision, the suspended sentence condition, and the fact that the search was of his vehicle—diminished Sprouse's reasonable expectation of privacy, such that a warrantless search based only on reasonable suspicion was constitutional. (*Id.* at 16–18.) It also argues that although reasonable suspicion sufficed to render the search constitutional, "the facts also established probable cause anyway." (*Id.* at 19–23.)

*i. Scope of the Waiver*

At the outset, the court addresses the arguments Sprouse makes about the applicability of the waiver to the challenged search. Sprouse does not contest the fact that he voluntarily waived his Fourth Amendment rights when he signed the plea agreement in 2020 and agreed to a suspended sentence with the delineated conditions. Nevertheless, he argues that the

[4] The government does not raise the *Arizona v. Gant*, 556 U.S. 332 (2009), "search incident to arrest" exception to the warrant requirement, despite Officer Wood's statement on the scene that "because [Sprouse] was the driver . . . I can search his reachable area." (Body Worn Camera at 2:52–3:09; Body Worn Camera Tr. at 1.) This is for good reason, as Sprouse was clearly "handcuffed and secured in [a] patrol car[]" and "not within reaching distance of his car at the time of the search." *Gant*, 556 U.S. at 344. Moreover, he was arrested for a capias order in a civil suit such that "evidence of the offense for which he was arrested" would not be found in the vehicle. *Id.* Thus, the *Gant* exception does not justify this search.

waivers in his plea agreement and suspended sentence conditions do not hinder his ability to challenge the warrantless car search because the language and scope of the waiver is limited. Specifically, Sprouse argues that: (1) the provisions waive Fourth Amendment rights only against *warrantless* searches, not *unreasonable* searches; and (2) the language conditions the waiver on Sprouse's consent to that particular search. (Def.'s Reply at 4–10.) The court will address each in turn.

First, Sprouse distinguishes his own waiver language from that of the cases cited by the government by emphasizing that he only expressly waived his "Fourth Amendment rights against a *warrantless* search," not against an *unreasonable* search. (*See* Plea Agreement at 2; Adjudication & Sentencing Order at 3.) He contends that he "is not contesting the *warrantless* search of his car, instead he is contesting the *unreasonable* search of his car that was not based on probable cause." (Def.'s Reply at 4–5 (emphasis in original).) But Sprouse's own motion to suppress opens by asserting that "Officer Wood had no legal grounds to perform a warrantless search." (Mot. to Suppress at 4.) At least part of Sprouse's motion argues how Officer Wood improperly searched the car "without a judicially issued warrant or Mr. Sprouse's consent." (*Id.*)

To the extent that Sprouse challenges the search purely on the basis that the officers lacked probable cause, and not whether they had a warrant, this still constitutes an invocation of his "Fourth Amendment right against a warrantless search" and falls within the plain language of the waiver. (Plea Agreement at 2; Adjudication and Sentencing Order at 3.) In other words, if Sprouse is only arguing that the search is unconstitutional because there was a

lack of probable cause, he has still waived this argument by agreeing to both (1) "waive his[] Fourth Amendment right against a warrantless search for a period of [four] years from release from incarceration" and (2) "consent and voluntarily submit to a warrantless search of his/her person, place of residence or any vehicle he/she is occupying, at any time of the day or night by any law enforcement officer during this period." (Plea Agreement at 2–3.)

Sprouse quotes various other conditions of supervision that waive the defendant's rights against "unreasonable searches," to argue that his own provision is narrower. (Def.'s Reply at 6–8 (first quoting *Anderson*, 490 S.E.2d. at 275; then *Commonwealth v. Bowen*, No. 0427-21-4, 2021 WL 4783124, at *1 (Va. Ct. App. Oct. 14, 2021); and then *Perry*, 2025 WL 2938819, at *3).) He proceeds to argue that the waiver language is "ambiguous about whether it was waiving the right to contest any searches or whether it was waiving the right to contest the need to get a warrant where one would otherwise be required." (*Id.* at 8.) Fourth Circuit precedent does instruct that the court construe "any ambiguities in a plea agreement against the government as its drafter." *United States v. Tate*, 845 F.3d 571, 575 (4th Cir. 2017). But the mere fact that other cases involved different plea agreement or sentencing conditions with language that more broadly waives all Fourth Amendment rights does not, in itself, render Sprouse's provision ambiguous.

Because "[a] plea agreement is a contract," the court "read[s] the 'plea agreement's plain language in its ordinary sense' to ensure that each party 'receive[s] the benefit of their bargain.'" *United States v. Notgrass*, 130 F.4th 129, 136 (4th Cir. 2025) (quoting *Tate*, 845 F.3d at 575). The plain, unambiguous language of the second sentence indicates that Sprouse *consented* to all

warrantless searches for the specified four-year period. Consent "provides an exception to the Fourth Amendment's warrant *and probable cause* requirements," *United States v. Ortiz*, 669 F.3d 439, 445 (4th Cir. 2012) (emphasis added), such that on its face, the provision waives Sprouse's Fourth Amendment claims based on both the probable cause and warrant requirements. Nor is the first sentence ambiguous, as inherent in Sprouse's "Fourth Amendment right against a warrantless search" is his right to be free from warrantless searches that are not supported by probable cause.

Sprouse's interpretation of the waiver provision is against common sense. If, as Sprouse suggests, he did *not* waive his right to challenge warrantless searches that were unreasonable, then it follows that his plea agreement only waived warrantless searches that were reasonable. Because "warrantless searches are *per se* unreasonable under the Fourth Amendment," the only reasonable, warrantless searches conceivable would be those that fall under one of the "few specifically established and well-delineated exceptions" to the warrant requirement. *City of Ontario*, 560 U.S. at 760 (cleaned up). This would make the Fourth Amendment waiver entirely meaningless. In other words, because the Fourth Amendment protects against unreasonable searches and seizures, a waiver of Sprouse's right to challenge warrantless but reasonable searches would have no effect. Ultimately, Sprouse's waiver of his "Fourth Amendment right against warrantless searches" unambiguously applies to the case at issue and to all of Sprouse's arguments that the search was unconstitutional, including his argument that the officers lacked probable cause or reasonable suspicion.

Second, Sprouse argues that a particular phrase included in his waiver clause—"Defendant agrees *to consent and voluntarily submit* to a warrantless search"—means that he only waives his Fourth Amendment rights when he affirmatively consents to each individual search to which he is subjected. (Mot. to Suppress at 13 (quoting Adjudication & Sentencing Order at 4) (emphasis in original).) Once again, Sprouse attempts to create ambiguity where there is none. Sprouse's interpretation of this language is untenable for several reasons. The preceding sentence in the waiver clause makes clear that Sprouse "*agrees* to waive [his] Fourth Amendment right against a warrantless search." (Adjudication & Sentencing Order at 4.) The provision uses the present tense to show that, at the time he signed the agreement, he was giving a present waiver. It also includes this imperative language: "any evidence seized from such search *shall* be admissible in any hearing or trial resulting therefrom." *Id.* (emphasis added); *see also Anderson*, 507 S.E.2d at 342 (finding that the word "shall" in a similar waiver provision "state[s] an imperative and do[es] not refer to a future act" (cleaned up)).

Moreover, if the court were to adopt Sprouse's reading of the waiver provision, it would again render this prospective waiver meaningless. Under Sprouse's interpretation, the provision in the plea agreement and sentencing order allows the court to find that Sprouse waived his Fourth Amendment rights *only* if he affirmatively consented to this particular search of his car. But even without any prospective Fourth Amendment waivers, voluntary consent already "provides an exception to the Fourth Amendment's warrant and probable cause requirements," *United States v. Ortiz*, 669 F.3d 439, 445 (4th Cir. 2012), so an additional requirement that Sprouse provide affirmative consent in each instance of search or seizure

would make the Fourth Amendment waiver term superfluous. *See Anderson*, 507 S.E.2d at 342 (rejecting the defendant's argument that the phrase "the defendant *shall* waive his Fourth Amendment right" requires him to take future action to waive the right).

The court reads the language in both the waiver provisions about agreeing to "consent and voluntarily submit" to reflect Sprouse's agreement to prospectively waive his Fourth Amendment rights and consent to all future warrantless searches occurring in the four-year period following his release from incarceration. Accordingly, Sprouse's statement that he "[didn't] consent to any search of [his] vehicle" following his arrest, (Body Worn Camera Tr. at 1), does not preclude the court's consideration of the Fourth Amendment waiver.

*ii. Officers' Knowledge of the Waiver*

In his motion to suppress, Sprouse argues that the Fourth Amendment waiver provisions cannot justify the warrantless search because Officer Wood was not aware of the waiver before he initiated the search. (Mot. to Suppress at 11–13.) Sprouse cites several out-of-circuit cases holding that the officers must have been aware of the waiver provision before the challenged search for it to have rendered the search reasonable. (*Id.* (citing *United States v. Job*, 871 F.3d 852, 859 (9th Cir. 2017); *United States v. Graham*, No. CRIM 06-10040, 2007 WL 534459, at *3 (D. Mass. Feb. 16, 2007), *aff'd*, 553 F.3d 6 (1st Cir. 2009); *United States v. Williams*, 702 F. Supp. 2d 1021, 1030 (N.D. Ill. 2010).) As the government points out, each of these cases only involve a Fourth Amendment waiver as a probation or parole condition. (*See* Gov't Opp. at 14 n.3.) But, for Sprouse, the waiver was not only a court-imposed condition; it was an element of his *negotiated* plea agreement and suspended sentence. (Gov't Opp. at 14–15.)

"Plea agreements like [Sprouse's] culminate in a set of mutual promises . . . which are made in exchange for some concession or benefit." *United States v. Lubkin*, 122 F.4th 522, 530 (4th Cir. 2024) (cleaned up). To encourage plea negotiations, "[the court's] job is to ensure that each party 'receive[s] the benefit of its bargain.'" *Id.* (quoting *United States v. Blick*, 408 F.3d 162, 173 (4th Cir. 2005)). Accordingly, so long as they are unambiguous and voluntarily entered, the court must enforce the terms of the plea agreement as written. *See United States v. Harvey*, 791 F.2d 294, 300–01 (4th Cir. 1986). Sprouse's agreement says nothing about requiring the law enforcement officer to be aware of the waiver for the search to fall within the scope of the waiver. Rather, it unambiguously states that Sprouse "agrees to consent and voluntarily submit to a warrantless search . . . by *any* law enforcement officer." (Plea Agreement at 2) (emphasis added); *see Anderson*, 507 S.E.2d at 342 (finding that a similarly worded waiver in which defendant agreed to submit to a search by "*any* law enforcement officer" did not require the searching officer to have prior knowledge of the waiver) (emphasis in original).).

Virginia state courts have repeatedly interpreted similar Fourth Amendment waivers as not including an implied requirement that the officer be aware about the waiver for the search to be justified. *See Anderson*, 507 S.E.2d at 342; *Bowen*, 2021 WL 4783124, *2–3. In a waiver provision that, like Sprouse's, was silent about whether the officer needed to be aware of the provision, the Virginia Supreme Court found "any contention that the officers' lack of prior knowledge of [the defendant's] waiver rendered the search invalid" to be "meritless" because "[t]he waiver expressly states that [the defendant] agreed to submit his person or property to '*any* law enforcement officer.'" *Anderson*, 507 S.E.2d at 342 (emphasis in original). The United

States Supreme Court has previously instructed that "the construction of [a state court] plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law," such that the federal courts should not "disturb the [state] Supreme Court's reasonable disposition of those issues." *Ricketts v. Adamson*, 483 U.S. 1, 5 n.3 (1987). This court will not overstep its role and construe the plea agreement to contain a term not expressly included in the Fourth Amendment waiver.

To the extent that Sprouse implies the *Perry* court's holding turned on the fact that officers knew about the defendant's waiver prior to searching the motel room, the court disagrees. (Mot. to Suppress at 12–13.) Sprouse argues that *Perry* suggests "police cannot rely on a probationer's Fourth Amendment waiver to justify a warrantless search unless they were aware of the waiver before the search." (*Id.* at 13.) But the *Perry* court only addresses the officers' knowledge of the waiver *after* concluding that "Perry has no basis to challenge the warrantless search." *Perry*, 2025 WL 2938819, at *5. In a subsequent section setting forth an alternative holding, the court states "*even assuming that Perry's Fourth Amendment waiver was no longer in effect*, the good-faith exception to the warrant requirement would nevertheless permit the introduction of the evidence." *Id.* (emphasis added). Only then does it discuss the officers' knowledge of the waiver as a separate basis for finding the search constitutional, and thus does not imply that the officers needed to know about the waiver for it to justify the warrantless search. *Id.* at *5–6.

*iii. Totality of the Circumstances*

Even if the waiver alone does not justify the search, the vehicle search was nevertheless reasonable under the totality of the circumstances. "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Knights*, 534 U.S. at 118–19 (citing *Houghton*, 526 U.S. at 300). In *Knights*, the Supreme Court held that the Fourth Amendment waiver condition in the defendant's probation terms was a "salient circumstance" when deciding, under the totality of the circumstances, whether the warrantless search was reasonable. *Id.* at 118–22. It declared that "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interest is reasonable . . . [and] sufficient [to] render a warrant requirement unnecessary." *Id.* at 121 (cleaned up). Thus, the Court concluded, a law enforcement officer only needed reasonable suspicion to conduct a warrantless search of the apartment of an individual probationer. *Id.*

Sprouse's two-year supervised probation period ended on December 27, 2023—over a year before the arrest and search at issue in this case. (*See* Dkts. 36-1 at 2; 36-2.) Thus, unlike the defendant in *Knights*, Sprouse was no longer on probation when his car was searched. Yet Sprouse was still subject to several conditions of his suspended sentence and plea agreement, including the Fourth Amendment waiver condition and a good behavior condition.

(Adjudication & Sentencing Order at 3; Plea Agreement at 2–3.) Sprouse may not have technically been a "probationer," but he was still bound by the terms he had agreed to in exchange for receiving a suspended sentence of two years, with thirteen years suspended. (Adjudication & Sentencing Order at 2–3.)

The Supreme Court's reasoning for reducing the probable cause requirement to reasonable suspicion in *Knights* is applicable to Sprouse's suspended sentence condition and plea agreement term. Although he was no longer a probationer, Sprouse was "on the 'continuum' of state-imposed punishments" at the time of his arrest. *Samson v. California*, 547 U.S. 843, 850 (2006) (quoting *Knights*, 534 U.S. at 119). The Fourth Amendment waiver in his suspended sentence conditions was one of seven "reasonable conditions" imposed by the sentencing court "that deprive the offender of some freedoms enjoyed by law-abiding citizens." *Knights*, 534 U.S. at 119. Like the defendant in *Knights*, Sprouse "[did] not enjoy the absolute liberty to which every citizen is entitled" because "[t]he judge who sentenced [Sprouse] . . . determined that it was necessary to condition the [suspended sentence] on [Sprouse's] acceptance of the search provision." *Id.* (cleaned up). And because the condition was clearly set out both in Sprouse's signed plea agreement, which the court found was entered knowingly and voluntarily, (Plea Agreement at 2–3), and in his Adjudication and Sentencing Order, (Adjudication & Sentencing Order at 2–3), Sprouse was clearly informed of and agreed to the waiver. *See Knights*, 534 U.S. at 119–20. Accordingly, his reasonable expectation of privacy was "significantly diminished." *Id.*; *see Samson*, 547 U.S. at 848–850, 857 (applying the same reasoning as *Knights* to find that "the Fourth Amendment does not prohibit a police

officer from conducting a [warrantless,] suspicionless search of a parolee," pursuant to the parolee's written agreement to be subject to these searches).

The court also considers the fact that the officers searched Sprouse's vehicle rather than his home as informing his diminished expectation of privacy. The Supreme Court has recognized that "one's expectation of privacy in an automobile and of freedom in its operation are significantly different from the traditional expectation of privacy and freedom in one's residence." *United States v. Martinez-Fuerte*, 428 U.S. 543, 561 (1976). The Fourth Circuit has held that "it may be reasonable and therefore constitutional to search a movable vehicle without a warrant, even though it would be unreasonable and unconstitutional to conduct a similar search of a home, store, or other fixed piece of property." *United States v. Stephens*, 764 F.3d 327, 331 (4th Cir. 2014) (quoting *United States v. Gastiaburo*, 16 F.3d 582, 586 (4th Cir. 1994)). "[T]his rule of diminished expectation of privacy is particularly appropriate when the automobile is located in the street or in a public area." *Id.* at 331–32 (quoting *United States v. Bellina*, 665 F.2d 1335, 1340 (4th Cir. 1981)). Sprouse had driven his vehicle in public and parked it outside of an open store just before his arrest. That said, Officer Wood's search involved opening Sprouse's center console, as well as other closed containers in the car, and much of the evidence was found in these concealed spaces. (Mot. to Suppress at 3–4.) An individual would generally have an expectation of privacy in these concealed portions of the car, as "the privacy interests in a car's trunk or glove compartment may be no less than those in a movable container." *United States v. Ross*, 456 U.S. 798, 823 (1982). But when considering

the combination of the waiver conditions and the car context, Sprouse at least had a diminished expectation of privacy in his car.

Next, the court turns to the governmental interest side of the balancing test. The court must first consider recidivism and the importance of apprehending reoffenders. *See Samson*, 547 U.S. at 853–54; *see also Knights*, 534 U.S. at 120 ("[P]robationers have even more of an incentive to conceal their criminal activities and quickly dispose of incriminating evidence than the ordinary criminal because probationers are aware that they may be subject to supervision and face revocation of probation, and possible incarceration . . . ."). The Fourth Amendment waiver, as a term of Sprouse's suspended sentence, reflects "the concern, quite justified, that he will be more likely to engage in criminal conduct than an ordinary member of the community." *Knights*, 534 U.S. at 121. Moreover, in Sprouse's case, the government has a strong interest in enforcing the provisions in the plea agreement—the "terms of the bargain to which the parties agreed." *United States v. Chase*, 466 F.3d 310, 314 (4th Cir. 2006). "Enforcing [] plea agreement waivers [of constitutional rights] promotes 'the government's interest in avoiding both the expense and uncertainty of further litigation.'" *Jones v. United States*, No. 7:09-cr-00027, 2010 WL 3743644, at *3 (W.D. Va. Sept. 23, 2010) (quoting *Garcia-Santos v. United States*, 273 F.3d 506, 509 (2d Cir. 2001)). Thus, searches made pursuant to the waiver during the period following Sprouse's release are necessary for the promotion of legitimate governmental interests.

Overall, "the balance of these considerations requires no more than reasonable suspicion to conduct a search" of Sprouse's vehicle. *Knights*, 534 U.S. at 121. Sprouse's

reduced expectation of privacy, when balanced against the important government interests at stake, "warrant a lesser than probable-cause standard." *Id.* And it is this same balancing calculation that "render[s] a warrant requirement unnecessary" in this case. *Id.*

*iv. Presence of Reasonable Suspicion*

Considering the totality of the circumstances, Officer Wood had reasonable suspicion that Sprouse's car contained contraband before initiating the car search.

To assess whether an officer's action is supported by reasonable suspicion, the court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). "Reasonable suspicion requires some minimal level of objective justification—more than a mere hunch, but something less than probable cause." *United States v. Epps,* 983 F.2d 1058 (4th Cir. 1992) (unpublished table decision); *see Kansas v. Glover*, 589 U.S. 376, 380 (2020). The Supreme Court has found reasonable suspicion met where, "[a]lthough each of the series of acts was 'perhaps innocent in itself,' . . . taken together, they 'warranted further investigation.'" *Arvizu*, 534 U.S. at 274 (quoting *Terry v. Ohio*, 392 U.S. 1, 22 (1968)). "Courts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street." *United States v. Lender*, 985 F.2d 151, 154 (4th Cir. 1993).

Several circumstances of Sprouse's arrest, when taken together, provided Officer Wood with reasonable suspicion that Sprouse's car would contain evidence of a crime. At first, when Officer Wood informed Sprouse that he could search the reachable area of the

driver's seat and asked him several times if there was anything Sprouse needed or wanted to tell him, Sprouse did not answer his questions. (Body Worn Camera at 3:35–4:15, 7:27–7:31, 8:29–8:49.). Although "refusal to engage with police is not, by itself, a valid basis for reasonable suspicion," *see Milla v. Brown*, 109 F.4th 222 (4th Cir. 2024), it can, when "combined with other factors," "contribute to reasonable suspicion," *United States v. Avagyan*, 164 F. Supp. 3d 864, 882 (E.D.V.A. 2016); *see also Kolender v. Lawson*, 461 U.S. 352, 366 n.4 (1983) (Brennan, J., concurring) ("In some circumstances it is even conceivable that the mere fact that a suspect refuses to answer questions once detained, viewed in the context of the facts that gave rise to reasonable suspicion in the first place, would be enough to provide probable cause."). Here, Sprouse's refusal to answer Officer Wood's questions was followed by his lie to Officer Wood that he "wasn't driving" the vehicle. (Body Worn Camera at 8:13–8:16; Body Worn Camera Tr. at 3.) Officer Wood observed Sprouse driving just before he parked the car at Go-Co, (*id.* at 8:16–8:29), and the dashboard camera shows Sprouse exiting the driver's side of the vehicle, (Dashcam at 1:17–1:24). Courts have repeatedly found that evasive conduct and making a false statement are factors contributing to a finding of reasonable suspicion. *See United States v. Branch*, 537 F.3d 328, 343 (4th Cir. 2008) (finding the fact that defendant "gave a false explanation of his cousin's whereabouts" to an officer contributes to the officer's reasonable suspicion); *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (holding that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion"); *United States v. Sprinkle*, 106 F.3d 613, 618 (4th Cir. 1997) ("Evasive conduct can, of course, assist an officer in forming reasonable suspicion."); *see also United States v. McFarley*, 991 F.2d 1188, 1192–94 (4th Cir. 1993)

(finding that individuals providing "inconsistent stories about details of their travel" contributes to reasonable suspicion). Although Sprouse may not have "persist[ed] in" this lie, (Def.'s Reply at 17), it is still a factor contributing to reasonable suspicion.

Thereafter, Officer Wood answered Sprouse's question about why he was being arrested and continued to encourage Sprouse to disclose if there was "something in this vehicle that [Officer Wood was] gonna find." (Body Worn Camera at 8:29–8:39; Body Worn Camera Tr. at 3–4.) Then, Officer Wood explained that telling him about the contents of the vehicle would help rather than hurt Sprouse. (*Id.*) Sprouse responded, "[b]ut I don't wanna spend the weekend in jail, bro." (*Id.* at 8:44–8:54; Body Worn Camera Tr. at 4.) This statement could reasonably be interpreted as insinuating that there was something incriminating in the car about which Sprouse was concerned. Sprouse argues in his reply brief that this statement was simply "an acknowledgement that he had just been arrested on a Friday on two civil failure to appear warrants." (Def.'s Reply at 17.) But this ignores the context of the conversation leading up to Sprouse's statement. Officer Wood could have reasonably interpreted Sprouse's statement as implying that disclosure of the contents of his car could put him in jail. Therefore, this statement contributed to Officer Wood's reasonable suspicion that the car contained evidence of illegal activity.

Finally, just after making the comment about spending the weekend in jail, Sprouse answered Officer Wood's question about what was in the car: "I've got a pipe. I, I've got a pipe, okay? I've got a, I've got a pipe." (Body Worn Camera at 9:08–9:13; Body Worn Camera Tr. at 4.) Sprouse argues that this statement is "neutral." (Def.'s Reply at 17–18; Mot. to

Suppress at 8–9.) The court agrees with Sprouse that in isolation, an admission that one has a pipe is not inherently incriminating. But in the cases that Sprouse cites to argue that the pipe is entirely neutral, the courts were assessing whether there was *probable cause* that triggered the *plain view exception*. (*See* Def.'s Reply at 18.) Here, the court is merely determining whether the pipe can serve as one of several factors contributing to *reasonable suspicion*. *United States v. Runner*, 43 F.4th 417, 422–23 (4th Cir. 2022) (collecting cases and noting that these cases "upholding plain view searches based on pipes and paraphernalia have involved the presence of additional evidence or indicators that contributed to a finding of probable cause"). There are "additional evidence or indicators" in this case, *id.* at 422, which make Sprouse's pipe statement much more suspicious: (1) that this statement was prompted by Officer Wood repeatedly asking if there was something in the car he was "gonna find" or something Sprouse "need[ed] to tell [him]" post-arrest; (2) that Sprouse lied about whether he was driving the car; and (3) that Sprouse stated he did not want to spend the weekend in jail.

*v. Fruit of the Poisonous Tree*

For the first time in his reply brief, Sprouse asserts that his pre-*Miranda* statements were not voluntary, such that the fruits of such statements, including the physical evidence uncovered from the vehicle search, must be suppressed. (Def.'s Reply at 11–16.) The court disagrees.

"[W]hen a statement is suppressed because of a *Miranda* violation, it does not follow that any physical or derivative evidence discovered as a result of the statement should also be suppressed." *United States v. Windham*, 362 F. Supp. 3d 310, 318 (D.S.C. 2019). The "fruit of

the poisonous tree" doctrine—which excludes all evidence derived from an illegal search unless "sufficiently distinguishable to be purged of the primary taint," *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)—does not require suppression of physical or derivative evidence discovered as a result of unwarned custodial interrogation. *See United States v. Sterling*, 283 F.3d 216, 218–19 (4th Cir. 2002) (holding that "derivative evidence obtained as a result of an unwarned statement that was voluntary under the Fifth Amendment is never fruit of the poisonous tree" (cleaned up)); *United States v. Patane*, 542 U.S. 630, 634-44 (2004) (declaring that "the exclusion of unwarned statements is a complete and sufficient remedy for any perceived *Miranda* violation" (cleaned up)). Accordingly, the fact that Sprouse's statements were made before receiving warnings is not enough to require suppression of the physical evidence obtained as a result of such statements.

However, the fruit of the poisonous tree doctrine *does* apply to involuntary statements. "[T]he exclusionary rule bars admission of the nontestimonial physical fruits of statements obtained in violation of *Miranda when those statements are involuntary* . . . ." *United States v. Alston*, 941 F.3d 132, 137 (4th Cir. 2019) (emphasis added). A statement "is involuntary under the Fifth Amendment only if it is 'involuntary' within the meaning of the Due Process Clause." *United States v. Braxton,* 112 F.3d 777, 780 (4th Cir. 1997) (en banc). A voluntary statement is "the product of an essentially free and unconstrained choice by its maker." *United States v. Bendann*, 180 F.4th 147, 157 (4th Cir. 2026) (quoting *Schneckloth*, 412 U.S. at 225). To determine whether a statement was voluntary or involuntary, the court must look to the totality of the circumstances to determine whether the defendant's "will has been overborne and his capacity

for self-determination critically impaired." *Id.* (quoting *Schneckloth*, 412 U.S. at 225). The court considers factors like the "characteristics of the defendant, the setting of the interview, and the details of the interrogation." *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987) (cleaned up). Relevant details include "the length and nature of the questioning, any promises or threats made, and any deprivation of essentials," as well as "the defendant's personal attributes, such as his age, education, intelligence, and mental state." *United States v. Ayesh*, 702 F.3d 162, 168 (4th Cir. 2012).

Here, Officer Wood's questioning only spanned approximately seven minutes, (*see* Body Worn Camera at 3:59–10:36), while he was waiting for Officer Chisom to arrive on the scene. The questioning was intermittent throughout those seven minutes; Officer Wood only asked a few questions at a time, and Sprouse repeatedly initiated the conversation. When Sprouse made his unwarned statements, he was under some of the pressures inherent in being under arrest: he was handcuffed and in the backseat of the closed patrol car. But throughout the encounter, Officer Wood physically and verbally interacted with Sprouse in a friendly and non-aggressive manner. (*See, e.g.*, Body Worn Camera at 1:27–2:17 (adjusting Sprouse's handcuffs for comfort and ensuring that Sprouse was able to fit in the backseat of the patrol car); *id.* at 4:09–4:15, 7:34–7:37 (assuring Sprouse that he was "gonna work with him").)

Sprouse challenges Officer Wood's representation to Sprouse that he "[could] search" the "reachable area" in Sprouse's car because Sprouse was the driver. (Def.'s Reply at 14; *see* Body Worn Camera at 3:35–3:47.) Although Officer Wood misstated the law, the court does not find that this rises to the level of rendering Sprouse's statements involuntary.

"[M]isrepresentations are insufficient, in and of themselves, to render a confession involuntary." *United States v. Whitfield*, 695 F.3d 288, 302 (4th Cir. 2012) (quoting *Johnson v. Pollard*, 559 F.3d 746, 755 (7th Cir. 2009)). To violate the Due Process Clause, the misrepresentations must have caused Sprouse's will to be overborne. *Id.* Given the lack of a particularly coercive environment—characterized by calm and cooperative interactions between Officer Wood and Sprouse, limited and sporadic questioning, the presence of Sprouse's girlfriend, and Sprouse's lack of vulnerabilities as a forty-five-year-old man previously convicted of eight felonies—the court does not find Sprouse's "capacity for self-determination" was "critically impaired." *Id.* at 303.

Sprouse also challenges Officer Wood's repeated questions for Sprouse about whether there was anything Sprouse wanted or needed to tell Officer Wood, (Body Worn Camera at 3:59–4:15); his statements encouraging Sprouse to be honest; and his claim that telling Officer Wood about the contents would help Sprouse, not hurt him, (*id.* at 8:29–8:41). But the Fourth Circuit has already held that such statements of encouragement do not constitute coercion. In *Whitfield*, the officer "encouraged [the defendant], advising him that 'you're doing nothing but helping yourself' by volunteering information." 695 F.3d at 297. The court held that "[the defendant's] will was not overborne by [the officer] encouraging him to talk, suggesting that [the defendant] would do 'nothing but help[] [himself].'" *Id.* at 303 n.8. Unlike Sprouse, the defendant in *Whitfield* had received his *Miranda* warnings before questioning began. However, this distinction does not change the fact that Officer Wood's "vague, nondescript encouragement did not misrepresent the legal effect of confessing," and Sprouse's will was

not overborne by such statements. *See id.* Even if Officer Wood's representation that Sprouse's disclosure would help and not hurt him was improper, "[t]he mere existence of . . . implied promises, improper influence, or other coercive police activity . . . does not automatically render a confession involuntary." *Braxton*, 112 F.3d at 780; *Illinois v. Perkins*, 496 U.S. 292, 297 (1990) ("Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda*'s concerns."). For the reasons already stated, the context surrounding Sprouse's statements—clearly depicted in the body worn camera footage—does not show that his will was overborne or his capacity for self-determination critically impaired.

Altogether, considering Sprouse's post-arrest and pre-*Miranda* statements and conduct, Officer Wood "observed enough specific and articulable facts to generate a 'reasonable suspicion'" that Sprouse's car would contain evidence of a crime. *Branch*, 537 F.3d at 338 (cleaned up). Under the totality of the circumstances, including Sprouse's Fourth Amendment waiver and the reduced expectation of privacy in automobiles, Officer Wood's reasonable suspicion justified his warrantless search.

## IV. Conclusion

For the foregoing reasons, the court will grant in part and deny in part Sprouse's motion to suppress. Any post-arrest statements Sprouse made to Officer Wood before Officer Wood read the *Miranda* warnings will be suppressed. The motion will be denied insofar as it seeks to suppress any physical evidence uncovered from the vehicle search.

An appropriate Order will issue.

**ENTERED** this 29th day of September, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE